[Cite as *State v. Clark*, 2016-Ohio-4614.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. Sheila G. Farmer, P.J. |
| Plaintiff-Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. John W. Wise, J. |
| -vs- | : | |
| | : | |
| STEPHEN K. CLARK | : | Case No. 15-COA-040 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:        Appeal from the Court of Common
                                Pleas, Case No. 15-CRI-184

JUDGMENT:                       Reversed and Remanded

DATE OF JUDGMENT:               June 20, 2016

APPEARANCES:

For Plaintiff-Appellee                  For Defendant-Appellant

CHRISTOPHER R. TUNNELL                  MATTHEW J. MALONE
EMILY M. BATES                          10 East Main Street
110 College Street                      Ashland, OH  44805
Third Floor
Ashland, OH  44805

*Farmer, P.J.*

{¶1}    On December 12, 2014, the Ashland County Grand Jury indicted appellant, Stephen Clark, on one count of having weapons under disability in violation of R.C. 2923.13, one count of aggravated possession of drugs in violation of R.C. 2925.11, one count of improperly handling firearms in a motor vehicle in violation of R.C. 2923.16, one count of trafficking in marijuana in violation of R.C. 2925.03, one count of possession of marijuana in violation of R.C. 2925.11, and one count of illegal use or possession of marijuana drug paraphernalia in violation of R.C. 2925.141.  Said charges arose from a traffic stop on December 7, 2014 and the subsequent search of appellant's glove box.

{¶2}    On March 23, 2015, appellant filed a motion to suppress, claiming an illegal search.  A hearing was held on May 18, 2015.  By judgment entry filed July 27, 2015, the trial court denied the motion, finding appellant voluntarily consented to the search of the glove box.

{¶3}    A bench trial commenced on October 2, 2015.  The trial court found appellant guilty as charged except for the paraphernalia charge.  By judgment entry filed November 12, 2015, the trial court sentenced appellant to an aggregate term of eighteen months in prison.  A nunc pro tunc judgment entry was filed on February 12, 2015 to include jail time credit.

{¶4}    Appellant filed an appeal and this matter is now before this court for consideration.  Assignment of error is as follows:

I

{¶5} "THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS."

I

{¶6} Appellant claims the trial court erred in denying his motion to suppress as the findings of probable cause to search his glove box was not supported by the evidence. We agree.

{¶7} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. *State v. Fanning,* 1 Ohio St.3d 19 (1982); *State v. Klein,* 73 Ohio App.3d 486 (4th Dist.1991); *State v. Guysinger,* 86 Ohio App.3d 592 (4th Dist.1993). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *State v. Williams,* 86 Ohio App.3d 37 (4th Dist.1993). Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry,* 95 Ohio App.3d 93 (8th Dist.1994); *State v. Claytor,* 85 Ohio App.3d 623 (4th Dist.1993); *Guysinger.* As the United States Supreme Court held in *Ornelas v. U.S.,* 517 U.S. 690,

116 S.Ct. 1657, 1663 (1996), "…as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal."

{¶8}   In *Terry v. Ohio,* 392 U.S. 1, 22 (1968), the United States Supreme Court determined that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest."   However, for the propriety of a brief investigatory stop pursuant to *Terry*, the police officer involved "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."  *Id.* at 21.  Such an investigatory stop "must be viewed in the light of the totality of the surrounding circumstances" presented to the police officer.  *State v. Freeman,* 64 Ohio St.2d 291 (1980), paragraph one of the syllabus.

{¶9}   As explained by the United States Supreme Court in *Texas v. Brown,* 460 U.S. 730, 742, 103 S.Ct. 1535 (1983):

As the Court frequently has remarked, probable cause is a flexible, common-sense standard.  It merely requires that the facts available to the officer would "warrant a man of reasonable caution in the belief," *Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925), that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false.  A "practical, nontechnical" probability that incriminating evidence is involved is all that is required.  *Brinegar v.*

*United States,* 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949).

{¶10} In *Carroll v. United States,* 267 U.S. 132, 153, 45 S.Ct. 280 (1925), the United States Supreme Court explained the following:

> We have made a somewhat extended reference to these statutes to show that the guaranty of freedom from unreasonable searches and seizures by the Fourth Amendment has been construed, practically since the beginning of the government, as recognizing a necessary difference between a search of a store, dwelling house, or other structure in respect of which a proper official warrant readily may be obtained and a search of a ship, motor boat, wagon, or automobile for contraband goods, where it is not practicable to secure a warrant, because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.

{¶11} "If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more." *Pennsylvania v. Labron,* 518 U.S. 938, 940, 116 S.Ct. 2485 (1996).

{¶12} In the case sub judice, a suppression hearing was held on May 18, 2015. The sole testimony was offered by the arresting officer, Ohio State Highway Patrol Trooper Brad Bishop. Trooper Bishop stated he stopped appellant for speeding. May 18, 2015 T. at 5, 12. Trooper Bishop asked appellant for his license, registration, and

insurance for the vehicle. *Id.* at 6. Appellant produced an Indiana driver's license, but did not have any paperwork for the vehicle as it was a rental. *Id.* Because the vehicle did not contain barcodes on the window typical of rentals and had a dealer bracket around the license plate, Trooper Bishop became concerned that the vehicle could have been stolen. *Id.* at 6-7.

{¶13} A "registration check showed that the license plate showed it was returning to the correct vehicle, however, no other information was listed back with the registration in the computer file." *Id.* at 7. Trooper Bishop looked through the vehicle with his flashlight and did not find any paperwork. *Id.* at 8. He asked appellant if the paperwork could be in the trunk whereupon appellant voluntarily opened the trunk and the two searched for the registration and rental agreement paperwork, but found nothing. *Id.* at 8, 15.

{¶14} Trooper Bishop then walked around to the driver's side of the vehicle as well as the passenger's side and looked inside the vehicle with his flashlight, on the floor and in between the seats, finding no paperwork. *Id.* at 9, 16-17. Trooper Bishop had not asked appellant for permission to search inside the vehicle. *Id.* at 16-17. He attempted to open the glove box, but it was locked. *Id.* at 17. He approached appellant with his hand outstretched and asked him if he had the keys to the vehicle. *Id.* at 17-18. Appellant handed him the keys. *Id.* at 10, 17-18. Trooper Bishop did not specifically ask for the keys, ask for permission to search the glove box, or ask appellant to open the glove box. *Id.* at 18. As Trooper Bishop started to open the glove box, appellant informed him of a firearm therein. *Id.* at 10, 18. Trooper Bishop opened the glove box and found a firearm with a round in the chamber and the registration and rental agreement paperwork. *Id.*

{¶15} In its July 27, 2015 judgment entry denying the motion to suppress, the trial court found appellant voluntarily opened the trunk and voluntarily handed the keys to Trooper Bishop. The trial court concluded appellant's "consent to search the glove compartment was voluntary when he handed the keys over."

{¶16} There is no dispute Trooper Bishop had probable cause to stop the vehicle. The issue is the subsequent search for the registration and rental agreement paperwork. The narrow question is whether the facts and circumstances sub judice (Trooper Bishop approaching appellant with his hand outstretched and asking if he had the keys) support a finding of a voluntary consent to search.

{¶17} Appellee argues appellant consented to the search of the glove box because appellant was not in custody, jointly participated in the search of the trunk, and handed the keys to Trooper Bishop to open the glove box

{¶18} In *State v. Camp,* 5th Dist. Richland No. 14CA42, 2014-Ohio-329, ¶ 23-24, this court stated the following:

The United States Supreme Court further noted, "[w]hile most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response." *I.N.S. v. Delgado*, 466 U.S. 210, 216, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984); *Drayton*, *supra*, 536 U.S. at 205, 122 S.Ct. at 2113. Moreover, a voluntary consent need not amount to a waiver; consent can be voluntary without being an "intentional relinquishment or abandonment of a known right or privilege." *Schneckloth*

*v. Bustamonte*, 412 U.S. 218, 235, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1983), (*quoting Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1464 (1938)); *State v. Barnes*, 25 Ohio St.3d 203, 495 N.E.2d 922 (1986); *State v. McConnell*, 5th Dist. Stark No. 2002CA00048, 2002–Ohio–5300, ¶ 8.   Rather, the proper test is whether the totality of the circumstances demonstrates that the consent was voluntary.  *Id.*   Further, "[v]oluntary consent, determined under the totality of the circumstances, may validate an otherwise illegal detention and search."  *State v. Robinette*, 80 Ohio St.3d 234, 241, 685 N.E.2d 762 (1997), *citing United States v. Davis*, 328 U.S. 582, 593–594, 66 S.Ct. 1256, 90 L.Ed. 1453 (1946).  The voluntariness of a consent to a search is a question of fact and will not be reversed on appeal unless clearly erroneous.  *State v. Clelland*, 83 Ohio App.3d 474, 615 N.E.2d 276 (4th Dist.1992).

In *State v. Robinette*, 80 Ohio St.3d 234, 241, 685 N.E.2d 762 (1997), the Supreme Court noted,

We find *Bustamonte* instructive in defining when permission to search is truly consensual under the totality of the circumstances:

"[W]hen the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given,

and not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent." *Id.,* 412 U.S. at 248-249, 93 S.Ct. at 2059, 36 L.Ed.2d at 875.

80 Ohio St.3d at 242-243, 685 N.E.2d at 769. The burden of proving that the suspect voluntarily consented to the search rests upon the prosecution. *Schneckloth, supra*; *Danby, supra*; *Bumper v. North Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968); *State v. Hassey*, 9 Ohio App.3d 231, 459 N.E.2d 573 (10th Dist.1983); *State v. Pi Kappa Alpha Fraternity*, 23 Ohio St.3d 141, 491 N.E.2d 1129 (1986). The state's burden is not satisfied by showing a mere submission to a claim of lawful authority. *Robinette*, 80 Ohio St.3d at 243, 685 N.E.2d at 770.

{¶19} We note the joint search of the trunk was done with appellant opening the trunk and Trooper Bishop looking over appellant's shoulder as appellant looked in the trunk. May 18, 2015 T. at 8, 15. Trooper Bishop reached in and looked inside a brown paper bag to see if it contained the registration and rental agreement paperwork. *Id.* at 15. We discount this search as a circumstance that leads to appellant's voluntary consent to open the glove box. Trooper Bishop then proceeded to conduct his own search of the

inside of the vehicle.  *Id.* at 9, 16-17.  Appellant neither participated nor consented to this independent search.  Again, this search as a layer of appellant's consent to search can be disregarded.

{¶20}  The only area left unsearched was the locked glove box.  Although Trooper Bishop had concerns about whether the vehicle had been stolen versus rented, that suspicion did not rise to the level of probable cause.  By approaching appellant with an outstretched hand and asking for the keys, Trooper Bishop did so under the color and authority of his badge and uniform.  In looking at the totality of the circumstances, we find the mere relinquishment of the keys by appellant to be insufficient to establish voluntary consent.

{¶21}  Upon review, we find the trial court erred in denying the motion to suppress.

{¶22}  The sole assignment of error is granted.

{¶23}  The judgment of the Court of Common Pleas of Ashland County, Ohio is hereby reversed, and the matter is remanded to said court for further proceedings consistent with this opinion.

By Farmer, P.J.

Hoffman, J. and

Wise, J. concur.

SGF/sg 520

*Hoffman, J., dissenting*

{¶24} I respectfully dissent from the majority opinion.

{¶25} I would affirm the trial court's decision to overrule Appellant's motion to suppress based upon the automobile exception to the Fourth Amendment. I find Trooper Bishop had probable cause to search Appellant's vehicle once Appellant told the trooper he had a firearm in the glove box. Because this occurred prior to the trooper's search, I find any analysis of whether Appellant consented to the search unnecessary.

_____
HON. WILLIAM B. HOFFMAN