OPINION *Page 2 
{¶ 1} Defendant-appellant, Erik McCambridge, appeals from the trial court's denial of his Motion to Suppress. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF FACTS AND CASE {¶ 2} On April 18, 2008, appellant was indicted by the Stark County Grand Jury on one count of Illegal Manufacture of Drugs in violation of R.C. 2925.04(A), a second degree felony. At his arraignment on April 25, 2008, appellant entered a plea of not guilty to the charge.
 {¶ 3} Thereafter, on May 16, 2008, appellant filed a Motion to Suppress the evidence of a meth lab seized during a warrantless search of appellant's apartment on March 19, 2008. On May 21, 2008, the matter came before the court for hearing.
 {¶ 4} At the hearing, Officer Paul Vesco, an officer assigned to the special investigations unit of the Alliance Police Department, testified that, at approximately 6 P.M. on March 19, 2008, he spoke with Sergeant Carrozzi of the Portage County Drug Task Force. Officer Vesco testified that he had worked with Sergeant Carrozzi approximately 10 to 12 times over the past two years on various drug investigations, including the investigation of meth labs. He testified that Sergeant Carrozzi advised him that Carrozzi's unit had developed information in their jurisdiction regarding both an existing meth lab in an Alliance residence and a portable meth lab. Vesco testified that Carrozzi advised him that Carrozzi's unit believed that a man by the name of Jonathon Thomas had a portable meth lab and was traveling to Alliance to dismantle a meth lab in an Alliance apartment building located on the corner of Ely Street and North Union Avenue. Officer Vesco stated that Carrozzi advised him that Thomas was traveling to *Page 3 
Alliance in a white Chevy Berretta driven by Allaura Massrock. According to Officer Vesco, at around 7 P.M., Sergeant Carrozzi contacted him again and advised him that members of Portage County drug unit had been following the white Chevy Berretta from Portage County to Alliance and that the car was going to the apartment building on the corner of East Ely Street and North Union Avenue in Alliance.
 {¶ 5} Office Vesco testified that, after speaking with Carrozzi, he and several other officers responded to North Union Avenue where they found the Chevy Berretta. The officers observed a white male, who they believed to be Jonathon Thomas, and a white female, later identified as Allaura Massrock, on the north side of the vehicle. Officer Vesco stated that both persons were standing outside of the Chevy Berretta when they arrived. The officers subsequently learned that the white male who was outside the vehicle was not Jonathon Thomas, but rather was Thomas McCambridge, appellant's brother.
 {¶ 6} At the hearing, Officer Vesco testified that they approached Thomas McCambridge as he opened the apartment building door at 259 and ½ North Union Avenue. According to Officer Vesco, Thomas McCambridge had a backpack over his shoulder, which they assumed contained the portable meth lab. The officers then approached Thomas McCambridge, asked him for identification and asked him if he was carrying anything illegal. Thomas McCambridge presented an identification card and admitted to the officers that he had a small bag of marijuana and a digital scale in his backpack. Officer Vesco stated that Thomas McCambridge also told the officers that he was going to visit his brother, appellant, Erik McCambridge, who lived in apartment one of the building. Officer Vesco also testified that Allaura Massrock was *Page 4 
present with Thomas McCambridge and appeared to be under the influence of narcotics.
 {¶ 7} After speaking with Thomas McCambridge, Officer Vesco and the other officers walked up the flight of stairs and knocked on the door of apartment one, which was appellant's apartment, but there was no answer. Officer Vesco testified that, within five minutes of knocking on the door, they saw appellant approach from the west side of the apartment building. Officer Vesco stated that appellant approached the officers at the bottom of the stairwell directly in front of the apartment door. When appellant approached the officers, they were wearing clothing that clearly indicated they were all members of a police narcotics unit.
 {¶ 8} Officer Vesco testified that, after appellant arrived, they asked the appellant his name and if he lived in apartment one. Appellant then told the officers his name and that he lived in apartment one. Officer Vesco testified that Detective Lieutenant Hilles then asked appellant if the police could conduct a search of the appellant's apartment, to which appellant responded "yes." Officer Vesco testified that, upon giving consent for the search, appellant led the officers up the stairway, unlocked the door to his apartment and allowed the officers to enter. During a search of appellant's apartment, the officers located an active meth lab in the apartment.
 {¶ 9} Officer Vesco testified that, prior to asking appellant for consent to conduct the search, the officers did not have their weapons drawn, did not threaten appellant, and did not have appellant under any physical restraint.
 {¶ 10} At the conclusion of the hearing, the trial court overruled appellant's Motion to Suppress. Thereafter, appellant pleaded no contest to the charge. As *Page 5 
memorialized in a Judgment Entry filed on May 28, 2008, appellant was sentenced to a mandatory three (3) year prison term. In addition, appellant's driver's license was suspended for six (6) months, and appellant was fined a mandatory fine of $7,500.00.
 {¶ 11} It is from this judgment that appellant now seeks to appeal, setting forth the following assignment of error:
 {¶ 12} "THE TRIAL COURT ERRED AND VIOLATED APPELLANT'S RIGHTS AGAINST UNREASONABLE SEARCHES AND SEIZURES IN DENYING THE MOTION TO SUPPRESS THE EVIDENCE IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION AS WELL AS ARTICLE I SECTION 14 OF THE OHIO CONSTITUTION WHERE THE STATE FAILED TO ESTABLISH THE POLICE HAD PROBABLE CAUSE TO APPROACH AND SEARCH THE APARTMENT OF APPELLANT."
 {¶ 13} Appellant, in his sole assignment of error, argues that the trial court erred in denying his Motion to Suppress. Appellant specifically argues that the State failed to establish that the police had probable cause to approach and search appellant's apartment.
 {¶ 14} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. State v.Fanning (1982), 1 Ohio St.3d 19, 437 N.E.2d 583; State v. Klein (1991),73 Ohio App.3d 485, 597 N.E.2d 1137; State v. Guysinger (1993),86 Ohio App.3d 592, 621 N.E.2d 726. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law *Page 6 
to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. State v. Williams
(1993), 86 Ohio App.3d 37, 619 N.E.2d 1141, overruled on other grounds. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case.State v. Curry (1994), 95 Ohio App.3d 93, 641 N.E.2d 1172; State v.Claytor (1993), 85 Ohio App.3d 623, 620 N.E.2d 906; Guysinger, supra. As the United States Supreme Court held in Ornelas v. U.S. (1996),517 U.S. 690, 699, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."
 {¶ 15} Appellant argues that the police officers lacked probable cause to approach and search his apartment and that, for such reason, the trial court erred in overruling his Motion to Suppress.
 {¶ 16} However, as is stated above, Officer Vesco testified that appellant twice consented to the search of his apartment. Once appellant gave the officers consent to search his apartment, probable cause was no longer required. It is well-established a defendant waives his or herFourth Amendment protection by consenting to a warrantless search.State v. Barnes (1986), 25 Ohio St.3d 203, 208, 495 N.E.2d 922, citingDavis v. United States (1946), 328 U.S. 582, 66 S.Ct. 1256,90 L.Ed. 1453, *Page 7 Schneckloth v. Bustamonte (1973), 412 U.S. 218, 93 S.Ct. 2041,36 L.Ed.2d 854, State v. Pi Kappa Alpha Fraternity (1986),23 Ohio St.3d 141, 491 N.E.2d 1129.
 {¶ 17} Appellant argues that his consent was not voluntarily given to the police officers. "The standard of proof to show a waiver ofFourth Amendment rights is less strict than that required to demonstrate a waiver of Fifth or Sixth Amendment rights. It need not be shown that there has been a knowing and intelligent waiver. Rather, the court must examine the totality of the circumstances to determine the voluntariness of consent." Barnes, supra, at 208-209, citing Schneckloth, supra, andUnited States v. Mendenhall (1980), 446 U.S. 544, 100 S.Ct. 1870,64 L.Ed.2d 497.
 {¶ 18} "[W]hen the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth andFourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent." Schneckloth v. Bustamonte (1973), 412 U.S. 218,248-49 93 S.Ct. 2041, 2059, 36 L.Ed.2d 854, 875.
 {¶ 19} Important factors for a court to consider in determining whether consent is voluntary include: (1) the suspect's custodial status and the length of the initial detention; (2) whether the consent was given in public or at a police station; (3) the presence of threats, promises or coercive police procedures; (4) the words and conduct of the suspect; (5) the extent and level of the suspect's cooperation with the police; (6) *Page 8 
the suspect's awareness of his right to refuse to consent and his status as a "newcomer to the law"; and (7) the suspect's education and intelligence. See Schneckloth supra at 226. See State v. Cottrill, Fairfield App. No. 06-CA-64, 2007-Ohio-5293 at ¶ 20; see State v.Lattimore, Franklin App. No. 03AP-467, 2003-Ohio-6829, at ¶ 14; andState v. Dettling (1998), 130 Ohio App.3d 812, 815-816, 721 N.E.2d 449.
 {¶ 20} Appellant argues that he only gave consent for the search of his apartment because of the strong police presence in the small area outside his apartment. Appellant contends that the encounter during which he gave consent occurred in a small stairwell leading up to the upper units in the apartment building. However, the testimony of Officer Vesco established that when the officers asked appellant if they could search his apartment, they were not in the stairwell outside appellant's apartment. The officer testified that when he came into contact with appellant, he was "[standing outside in front of the doorway that is the outside door that leads to the top of the steps." Transcript at 12. Officer Vesco, also testified that appellant responded to the request to search his apartment by saying "yes" two separate times. Officer Vesco further testified that after consenting to the search, the appellant was cooperative, came up the stairwell, unlocked the apartment door and permitted the officers to enter the apartment. When asked, Officer Vesco testified that the appellant was not in custody or physically restrained and was not threatened or coerced to give consent for the search. He further testified that, when the officers came into contact with appellant, their weapons were not drawn. There is no evidence in the record that appellant was subjected to any coercion or that appellant merely submitted *Page 9 
to a claim of lawful authority. Therefore, under the totality of the circumstances, we find that the evidence indicated that the appellant voluntarily consented to the search.
 {¶ 21} For these reasons, we find that the trial court did not err in overruling appellant's Motion to Suppress.
 {¶ 22} Appellant's sole assignment of error is, therefore, overruled.
 {¶ 23} Accordingly, the judgment of the Stark County Court of Common Pleas is affirmed.
Edwards, J., Farmer, P.J., and Gwin, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant. *Page 1